# EXHIBIT 6

# KATHLEEN MULLINIX VS. MOUNT SINAI SCHOOL OF MEDICINE

---

KENNETH DAVIS, M.D.

October 18, 2013

---

Ellen Grauer
COURT REPORTING
Co. LLC
126 East 56th Street, Fifth Floor New York, New York 10022
PHONE: (212) 750-6434 FAX: (212) 750-1097
www.ELLENGRAUER.com

Original File 105325.TXT

Min-U-Script® with Word Index

position to give a formal performance evaluation?
A Yes.
Q Who?
A The dean for research or the dean for academic affairs.
Q And who were they?
A Initially, Dr. Iyanger was the dean for research and then Dr. Charney became the dean for research and the dean for academic affairs.
Q Did Dr. McGrath ever have an official reporting relationship to the dean for research?
A I don't know.
Q Was Dr. McGrath removed from his position as head of tech transfer at a certain point in time?
A Yes.
Q Whose decision was it to remove him?
A The dean's, in concurrence with me.
Q When you say "the dean's," who are you are referring to?
A Dr. Charney. Dr. Charney.
Q Okay, so the dean, singular?
MS. PLEVAN: He said "dean's" decision.
A Possessive.
Q So it was Dr. Charney's decision to remove

DAVIS

Dr. McGrath and you had approval over that decision?
A Concurrence.
Q Concurrence. How would you differentiate concurrence from approval?
A I give the dean a lot of discretion to do his job and only if I have a strong objection would I have changed that decision.
Q Is the area of technology transfer an area that you would characterize as being under the dean's purview of Mt. Sinai?
A Yes, with advice from me.
Q And is that what you just referred to as concurrence?
A Depends on the question that the office is dealing with that may come to my attention.
Q Is it fair to say that you delegate substantial autonomy to the dean over the area of technology transfer at Mt. Sinai?
MS. PLEVAN: Object to the form.
A On areas of personnel, I give him almost complete autonomy. On areas of policy, I would give him almost complete autonomy. On areas of litigation, we'll have a more consensual relationship.
Q When you talk about areas of litigation, are you

DAVIS

responsibility for technology transfer?
A No, no recollection of that.
Q In the summer of 2010, did Dean Charney have autonomy in the area of establishing vice president level positions over technology transfer?
A I would have --
MS. PLEVAN: Object to the form.
A I would have given him that autonomy, yes.
Q Is it fair to say that it was not your idea to create the position of the vice president for OTBD?
A Restate the question?
Q Is it fair to say that it wasn't your idea, personally, to create the position of vice president for OTBD?
A I'm confused. Are you asking me was it his or my idea to put the title vice president in front of it or to have a new position?
Q Let me start with the first question. Was it his idea or your idea to put vice president in front of the title?
A It wasn't my idea.
Q Was it his idea or your idea to create a new position heading technology transfer?
MS. PLEVAN: Object to the form.

DAVIS

A We always had a head of technology transfer.

Q Well, Dr. McGrath was working there up until his removal. He was the head of technology transfer, correct?

A Correct.

Q When Ms. Willey was hired, she was the head of technology transfer, correct?

A Correct.

Q There was an interim period, was there not, between the time that Dr. McGrath was relieved of those duties and Ms. Willey was appointed?

A Correct.

Q And during that period, was Kathleen Mullinix heading technology transfer at Mt. Sinai?

A Yes.

Q And she was heading it in an interim capacity, correct?

A Correct.

Q Now, during the time Dr. Mullinix was the interim head of technology transfer, she reported directly to Dean Charney, correct?

A Correct.

Q She had no reporting relationship to you, correct?

DAVIS

that in the search process?

A Jeff Silberstein would report to me the progress that was being made with the search firm and he created the job description.

Q Did you have any other involvement in the process?

A At the end, I concurred with the decision.

Q Would you characterize the decision making as to who was hired for the vice president position as being a decision by Dean Charney in which you had concurrence?

A That would be a fair description.

Q And the person that Dean Charney decided to hire and that you concurred with was Teri Willey, correct?

A Yes.

Q Did you have any understanding when Ms. Willey was hired as to whether, in addition to the vice president position that she was filling, there was going to continue to be a director of OTBD?

A I never made those distinctions in my mind.

Q And as far as you were concerned, there was a head of technology transfer; is that correct?

A Correct.

Q And there was only one head of technology transfer at any given time, correct?

DAVIS

A Correct.

Q Who selected the candidates that were interviewed at Mt. Sinai for the vice president of OTBD?

A I can't explicitly answer that with certainty.

Q Did you play a part in selecting those candidates?

A No.

Q Were they selected by Dean Charney?

A I'm not sure. He may have spoken to other people. You'd have to ask him.

Q Now, was it your understanding at any point in time that Dr. Mullinix was a candidate for the vice president position?

A Yes.

Q At what point in time did you first have that understanding?

A As -- from the beginning of the search process.

Q I'm handing you what was marked as Exhibit 69 at the deposition of Sean McCooe, M-C-C-O-O-E. These are extracts of Mr. McCooe's notes that he maintains in the Act database system, according to his testimony, and I'm going to ask you to turn to the last page of the exhibit which is Bates stamped 2 -- McCooe 2436, and I'll represent to you that Mr. McCooe testified that this --

DAVIS

A I cannot recall.

Q Can you recall anything else sitting here today about those conversations with Dean Charney and Mr. Silberstein regarding Kathy Mullinix?

A No.

Q When you concurred in the decision to hire Ms. Willey, did you believe that she had significant personal participation with the leadership of a life science based business?

A What does that mean? I can't follow what you just said.

Q Do you have an understanding as to what a life science based business is?

A I want you to elaborate what you mean by it.

Q I'm asking if you have an understanding.

A Not specifically. It seems pretty vague.

Q Did you believe that Teri Willey had any experience leading a business other than an academic technology transfer business?

A She was running a fund for Cambridge that wasn't leading a tech transfer company, but was finding in -- was making investments in Cambridge intellectual property and making deals around those -- around that property -- around those properties.

DAVIS

Q Okay. Other than her experience heading that fund that invested in intellectual property based businesses, was it your understanding that Ms. Willey had any other experience in leading a business that developed intellectual property or brought any products to market?

MS. PLEVAN: Object to the form. You can answer.

A Well, you know, to the degree that academic medical centers are -- are businesses, she led a business at the University of Chicago licensing products.

Q That was a technology transfer business, right?

A Sure.

Q So my question is -- I understand she had significant technology transfer leadership experience on the academic side and you said that she also headed a fund that invested in intellectual property based technology businesses. My question is: Was it your understanding that Ms. Willey had any direct leadership experience at a business that developed intellectual property based products?

A No.

Q She did not? Is that your understanding?

president and CEO. So from that point onward, was Dr. McGrath within the group of senior management for which you would receive an annual list of bonuses for approval purposes?

A Not sure.

MR. MAIR: Let's take a break. I think we're fairly close to being finished.

(Whereupon, a recess was taken at this time.)

MR. MAIR: Can you mark this as Plaintiff's Exhibit 78?

(Whereupon, Dean's Leadership Board Notes were marked as Plaintiff's Exhibit 78, for identification, as of this date.)

Q I'm showing you what's been marked as Exhibit 78, which is Bates stamped D97. This has been produced as a Dean's Leadership Board Notes from March 12, 2011. Have you ever seen this document before?

A No.

Q You will see that it indicates that in attendance was a Dr. Davis.

A Yes.

Q Does that refresh your recollection that you have, on that occasion, attended the dean's leadership

DAVIS

questions.

MS. PLEVAN: I have no questions for the witness.

(11:08 a.m.)

# C E R T I F I C A T E

I, CARYN R. MILLER, a shorthand reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness(es) whose testimony is hereinbefore set forth was duly sworn by me, and the foregoing transcript is a true record of the testimony given by such witness(es).

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of October, 2013.

--------------------
CARYN R. MILLER

# ERRATA SHEET

**Case:** Mullinix v. Mount Sinai School of Medicine, No. 12 civ 8659 (PKC)

**Deposition Date:** October 18, 2013

**Name of Witness:** Kenneth Davis, M.D.

| Page | Line | Change |
|---|---|---|
| 6 | 11 | Change "involved in" to "now part of" |
| 10 | 24 | "continuum" should be "Continuum" |
| 13 | 18 | "Matt" should be "Pat" |
| 23 | 4 | Add "I believe" between "and" and "he." |
| 36 | 2 | Add "and Jeff." after "represented." |
| 45 | 12 | Change "counsel" to "Council". |
| 53 | 2 | Change "own recite" to "oversight" |
| 61 | 6 | Change to "when the senior" |
| 61 | 9 | Delete "have that same" |
| 61 | 10 | Change to "at the same time or" |
| 61 | 11 | Change to "Numbers Day was taking…" |

KENNETH DAVIS, M.D.

Subscribed and sworn to before me this 13th day of January, 2014

Notary Public

IMELDA M TIERNAN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY LIC. #01TI6248236
COMM. EXP. 9/19/2015

September 19, 2015
My Commission Expires

0584/53300-632 current/40624695v1

01/06/2014 10:44 am