Proskauer» Proskauer Rose LLP Eleven Times Square New York, NY 10036-8299

February 11, 2015

Bettina B. Plevan
Member of the Firm
d 212.969.3065
f 212.969.2900
bplevan@proskauer.com
www.proskauer.com

**BY ECF**

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United State Courthouse
500 Pearl Street
New York, New York 10007

Re: *Kathleen Mullinix v. Mount Sinai School of Medicine,*
Civil Action No. 12 Civ. 8659 (PKC)

Dear Judge Castel:

We represent Defendant Icahn School of Medicine at Mount Sinai ("Defendant" or "Mount Sinai"), sued herein as Mount Sinai School of Medicine, and write in response to Plaintiff Kathleen Mullinix's ("Mullinix") letter dated February 4, 2015. As shown below, Mullinix has not proffered any authority that supports her contention that she is eligible to recover post-termination damages notwithstanding the court's determination that Mount Sinai's decision to terminate her employment was lawful. Moreover, because any award of post-termination damages would require the jury to evaluate a purely hypothetical scenario about whether and when Mullinix would have been terminated from the VP OTBD position, any award of post-termination damages would be too speculative. Therefore, the Court should rule that Mullinix's damages are cut off as the date that Mount Sinai lawfully terminated her employment. *See* Section I below. Finally, even if the Court concludes that, in spite of its conclusion that "discrimination played no role in Mullinix's termination," Mullinix can nevertheless recover post-termination damages, Mount Sinai requests that the Court determine the scope of evidence to be permitted during phase two of the trial (if any) in the manner proposed in Section II below.

## I. Mullinix's Damages Should Be Limited To The Period Of Her Employment With Mount Sinai

Mullinix largely ignores the cases cited by Mount Sinai in which various federal courts have held that where, as here, a fact-finder concludes that discrimination played no role in the plaintiff's termination, economic damages are limited to the period of the plaintiff's employment. Instead, she improperly relies on decisions that are wholly inapposite. The two cases cited by Mullinix – *Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.*, No. 00 Civ. 5207, 2002 U.S. Dist. LEXIS 9358, at *35 (S.D.N.Y. May 28, 2002) and *Strauss v. Microsoft Corp.*, 91 Civ. 5928, 1995 U.S. Dist. LEXIS 7433, at *15-16 (S.D.N.Y. June 1, 1995) – do not support Mullinix's contention that she is entitled to recover economic damages after her termination in July 2012 because neither of those decisions addressed whether the plaintiff's economic damages should be cut off as of the

date that the defendant lawfully terminated the plaintiff's employment. In fact, in neither case had the court or a jury determined that the defendant's decision to terminate the plaintiff was lawful. The courts merely addressed whether the plaintiffs in those cases had sufficiently mitigated their damages after being terminated by subsequent employers, ruling that such terminations must be for "willful" or "egregious" conduct to preclude a plaintiff from recovering economic damages thereafter. Indeed, in *Brenlla*, the jury had returned a verdict in favor of the plaintiff on her discriminatory termination claim. *Brenalla*, 2002 U.S. Dist. LEXIS 9358, at *2 (S.D.N.Y. May 28, 2002). In other words, in these cases the Court was deciding the extent of damages the plaintiff could recover when his or her termination is unlawful, an entirely different circumstance from this case. Mullinix's reliance on *Brenlla* and *Strauss* is therefore misplaced.

Here, the Court has unequivocally concluded that "discrimination played no role" in Mount Sinai's decision to terminate Mullinix's termination. (July 24, 2014 Order at 33). Therefore, Mullinix cannot, as a matter of law, recover post-termination damages because any such award would require the jury to set aside the court's conclusion. *See Abel v. Town Sports Int'l, LLC*, No. 09-cv-10388, 2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 18, 2012) (holding that plaintiff's damages on her hostile work environment claim were limited to pre-termination injury because the jury concluded that her termination was not unlawful); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp.2d 274 (S.D.N.Y. 2008) (remitting the plaintiff's damages to reflect the economic harm that she suffered only while employed because discrimination played no role in the cessation of plaintiff's employment). *See also, Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 756 (11th Cir. 2002) (noting that if plaintiff "was lawfully terminated on October 1, 1998, her lost back-pay/benefits on the discrimination claim could not exceed $3,300—the difference in salary and benefits between her position and that of Executive Director from the time of denial of the promotion to her termination on October 1, 1998"); *Levitant v. City of NY Human Res. Admin.*, 914 F. Supp.2d 281, 308 n.18 (E.D.N.Y. 2012), *aff'd*, 558 F. App'x 26 (2d Cir. 2014) (ruling that because plaintiff's termination in September 2005 was not unlawful, the plaintiff could not recover "any loss of salary after September 2005 when he was no longer working for the defendant.").

If the jury were permitted to award damages for the period after Mullinix's termination, any award of post-termination damages would be improperly speculative. *See Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp.2d 274, 303 (S.D.N.Y. 2008) (holding that an award of damages is improper where it requires "resorting to speculation and guesswork"). *See also Sagendorf-Teal v. Cnty of Rensseleaer*, 100 F.3d 270, 277 (2d Cir. 1996) (affirming denial of front pay award where "the proposed methods for calculating the award were too speculative."); *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992) ("an award of front pay cannot be unduly speculative").

While some degree of speculation is inherent in any award of post-termination damages (whether back pay or front pay), such awards still "require a degree of prediction." *Chisolm v. Liberty Lines Transit, Inc.*, 2013 U.S. Dist. LEXIS 16254, 19 (S.D.N.Y. Feb. 6, 2013). Awards of front pay are only allowed when a termination has been unlawful, justifying the reliance on some reasonable speculation. Thus, in assessing whether post-termination awards are unduly speculative, courts consider evidence regarding the plaintiff's age, education and skill, the

availability of alternative employment opportunities, and the plaintiff's efforts to find employment and mitigate damages. *See e.g., Hine v. Mineta*, 238 F. Supp. 2d 497, 501-502 (E.D.N.Y. 2003) (holding that front pay would be unduly speculative because the plaintiff "presented no evidence on the average work expectancy of an air traffic controller. Nor was there any testimony how long she expected to work in this profession."); *Fernandez v. North Shore Orthopedic Surgery*, 79 F. Supp. 2d 197 (E.D.N.Y. Jan. 27, 2000) (remitting front pay award from six years to two years because the jury's award was "highly speculative" in light of the plaintiff's age, high level of skill and experience, and reasonable prospects of obtaining comparable employment); *Dominic v. Consolidated Edison Co.*, 652 F. Supp. 815, 819 (S.D.N.Y. 1986) (awarding two years of front pay because of plaintiff's education and the strong possibility that he would find new employment at age 52).

Here, however, the speculation inherent in any award of post-termination damages goes well beyond assessing how long Mullinix would have been employed by Mount Sinai after July 12, 2012 (based on her age, skills, effort and availability to find alternate employment) because the jury would also have to speculate about whether Mullinix would have been employed after July 12, 2012. In fact, any award of post-termination damages would require the jury to speculate about whether (i) Dennis Charney ("Charney") and/or Scott Friedman ("Friedman") would have received the same complaints about Mullinix that Teri Willey ("Willey") received; (ii) Charney and/or Friedman would have experienced the same "friction" working with Mullinix as Willey experienced; and (iii) Charney and/or Friedman would have made the same decision as Willey to terminate Mullinix's employment. As Mullinix concedes, in considering these issues, the jury would be required to speculate about an entirely "hypothetical scenario." (2/4/15 Ltr. at 4). Thus, any award of post-termination damages would be far too speculative to support a reasonably predictable award.

Accordingly, Mullinix's damages should be limited to the period of her employment with Mount Sinai.

## II. Testimony About Post-Termination Damages In Phase Two Should Be Limited

If the Court concludes nevertheless that Mullinix can seek post-termination damages, the scope of evidence to be permitted during phase two of the trial (if any) should be limited to testimony by (i) Mount Sinai's witnesses (including Willey, Charney, Friedman, Dr. Palese and Dr. Sampson) about their interactions with Mullinix; (ii) Willey about complaints that she received about Mullinix and her view of Mullinix's performance; (iii) Charney and Friedman about the information provided to them by Willey about Mullinix; (iv) Charney and Friedman about whether they would have terminated Mullinix's employment based on the information provided by Willey, their own interactions with Mullinix and complaints that they received about her; and (v) Mullinix about how long she intended to work at Mount Sinai.

Contrary to Mullinix's assertion, it is far from "clear" that Mullinix would have reported to Charney – and not Friedman – if she had been promoted to the VP, OTBD position. Indeed, Friedman testified that upon assuming the role of Dean of Therapeutic Discovery in March 2012, he had direct responsibility for overseeing OTBD and that Willey reported to him and not

Charney. (Friedman Tr. at 14-18). Charney similarly testified that, upon Friedman's elevation to Dean of Therapeutic Discovery, Friedman assumed responsibility for overseeing OTBD and that Willey reported to both Friedman and Charney. (Charney Tr. at 201, 212-13). Therefore, if the jury is permitted to make a determination about whether Mullinix would have been "hypothetically" terminated, Friedman and/or Charney should be permitted to testify about the reasons that they would have terminated Mullinix's employment if she had reported to them.[1] On the other hand, it would be impermissibly speculative to allow Mullinix to testify about what she might have accomplished in the Vice President position.

At the conference scheduled on February 23 at 11 am, we will be prepared to address these issues along with those identified in Mount Sinai's January 22, 2015 letter.

Respectfully submitted,

Bettina B. Plevan

Bettina B. Plevan

cc: David Mair, Esq.

[1] Mullinix repeatedly states that Charney was "very pleased" with the job that Plaintiff did as the OTBD Director and cites to Charney's performance evaluation of "exceeds expectations." While Charney did, indeed, rate Mullinix "exceeds expectations," Mount Sinai will present evidence at trial that of the four administrative employees who reported to Charney in 2011, Mullinix received the lowest rating.